**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

_____

|  |  |  |
|---|---|---|
| **DENNIS A. HOWARD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL NO. 3:09CV820** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This matter is before the Court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment.[1]  Plaintiff, Dennis A. Howard, seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying his application for Social Security Disability ("DIB") payments.  The Commissioner's final decision is based on a finding by an Administrative Law Judge ("ALJ") that Plaintiff was not disabled as defined by the Social Security Act ("the Act") and applicable regulations.

For the reasons discussed herein, it is the Court's recommendation that Plaintiff's motion for summary judgment (docket no. 10) and motion to remand (docket no. 11) be DENIED; that

---

[1] The administrative record in this case has been filed under seal, pursuant to Local Civil Rules 5 and 7(C).  In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth), and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to only the extent necessary to properly analyze the case.

Defendant's motion for summary judgment (docket no. 13) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed for DIB on December 13, 2005, claiming disability due to emphysema and high blood pressure, with an alleged onset date of October 19, 2005. (R. at 14, 103-09.) The Social Security Administration ("SSA") denied Plaintiff's claims initially and on reconsideration.[2] (R. at 66-70, 74-76.) On October 18, 2007, accompanied by counsel, Plaintiff testified before an ALJ. (R. at 24-63.) On November 15, 2007, the ALJ denied Plaintiff's application for benefits, finding that he was not disabled under the Act where, based on age, education, work experience, and residual functional capacity, there are jobs he could perform which exist in significant numbers in the national economy. (R. at 11-23.) The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1-3.)

## II. QUESTION PRESENTED

Is the Commissioner's decision that Plaintiff is not entitled to benefits supported by substantial evidence on the record and the application of the correct legal standard?

## III. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the

---

[2] Initial and reconsideration reviews in Virginia are performed by an agency of the state government–the Disability Determination Services (DDS), a division of the Virginia Department of Rehabilitative Services–under arrangement with the SSA. 20 C.F.R. Part 404, Subpart Q; see also § 404.1503. Hearings before administrative law judges and subsequent proceedings are conducted by personnel of the federal SSA.

record and whether the proper legal standards were applied in evaluating the evidence. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is more than a scintilla, less than a preponderance, and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

In order to find whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary.'" Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (quoting Craig, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" Breeden v. Weinberger, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. While the standard is high, if the ALJ's determination is not supported by substantial evidence on the record, or if the ALJ has made an error of law, the district court must reverse the decision. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required in order to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; Mastro, 270 F.3d at 177. The analysis is conducted for the Commissioner by the ALJ, and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied, and

whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" (SGA).[3] 20 C.F.R. §§ 416.920(b), 404.1520(b).  If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition.  Id.  If the claimant establishes that he did not engage in SGA, the second step of the analysis requires him to prove that he has "a severe impairment . . . or combination of impairments which significantly limit[s] [his] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c); see also 20 C.F.R.404.1520(c).  In order to qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function.  20 C.F.R. § 404.1520(c).  At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends.  20 C.F.R. §§ 416.920(d), 404.1520(d).  If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is

---

[3] SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R. Substantial work activity is "work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  20 C.F.R. § 404.1572(a). Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(b).  Taking care of oneself, performing household tasks or hobbies, therapy or school attendance, and the like, are not generally considered substantial gainful activities.  20 C.F.R. § 404.1572(c).

required to determine whether the claimant can return to his past relevant work[4] based on an assessment of the claimant's residual functional capacity (RFC)[5] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. Id. However, if the claimant cannot perform his past work, the burden shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); Powers v. Apfel, 207 F.3d 431, 436 (7th Cir. 2000) (citing Bowen v. Yuckert, 482 U.S. 137, 146, n.5 (1987)); Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The Commissioner can carry his burden in the final step with the testimony of a vocational expert ("VE"). When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful." Id. If the ALJ finds that the

---

[4] Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[5] RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR-96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. Id. (footnote omitted).

claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly

entitled to benefits.  20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## IV.  ANALYSIS

The ALJ found at step one that Plaintiff had not engaged in SGA since the alleged onset of

his disability.  (R. at 16.)  At steps two and three, the ALJ found that Plaintiff had the severe

impairment of chronic obstructive pulmonary disease ("COPD"), but that this impairment did not

meet or equal any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1, as required for the award

of benefits at that stage.  (R. at 17.)  The ALJ next determined that Plaintiff had the RFC to

perform sedentary work, "in that he could lift/carry up to ten pounds occasionally, stand/walk up

to two hours in an eight-hour day, sit six hours in an eight-hour day, and bend or stoop only

occasionally."  Id.  The ALJ found that Plaintiff's RFC was further diminished "by an inability to

climb and an inability to perform work at unprotected heights, work requiring exposure to

temperature extremes, or work requiring excessive amounts of smoke, chemicals, or other air

pollutants."  Id.

The ALJ then determined at step four of the analysis that Plaintiff could not perform his

past relevant work as a lead lineman or shipping checker because of the level of exertion required

in each position.  (R. at 21.)  At step five, after considering Plaintiff's age, education, work

experience, and RFC, and after consulting a VE, the ALJ nevertheless found that there are other

occupations which exist in significant numbers in the national economy that Plaintiff could

perform.  (R. at 21-22.)  Specifically, the ALJ found that Plaintiff could work as a service

dispatcher, order clerk, and purchase order checker.  (R. at 22.)  Accordingly, the ALJ concluded

that Plaintiff was not disabled and was employable such that he was not entitled to benefits.  (R. at

22-23.)

Plaintiff moves for a finding that he is entitled to benefits as a matter of law, or in the alternative, he seeks reversal and remand for additional administrative proceedings. (Pl.'s Mot. for Summ. J.) In support of his position, Plaintiff argues that: (1) the ALJ failed to properly weigh the medical opinions of record; (2) the ALJ failed to properly evaluate Plaintiff's credibility; and (3) the ALJ relied upon flawed VE testimony. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") at 10-19.) Defendant argues in opposition that the Commissioner's final decision is supported by substantial evidence and application of the correct legal standard such that it should be affirmed. (Def.'s Mot. for Summ. J. and Br. in Supp. Thereof ("Def.'s Mem.") at 7-12.)

**A.** **Plaintiff contends that the ALJ failed to properly weigh the medical opinions of record.**

Plaintiff contends that the opinion of his treating physician, Dr. Zullo, was entitled to controlling weight. (Pl.'s Mem. at 10-14.) Plaintiff asserts that Dr. Zullo's opinion was based on medically acceptable clinical findings and diagnostic techniques, and that it is consistent with the other evidence of record. (Pl.'s Mem. at 12.) Additionally, Plaintiff asserts that the opinions of the two non-examining physicians, Drs. Cole and Moreno, are inconsistent with the evidence of record, and therefore cannot constitute substantial evidence to support the ALJ's decision. (Pl.'s Mem. at 12.) Thus, Plaintiff argues that because the opinion of Dr. Zullo is well supported and is based on objective medical findings, whereas the opinions of Drs. Cole and Moreno are unsupported, the ALJ should have assigned controlling weight to the opinion of Dr. Zullo.

During the sequential analysis, when the ALJ determines whether the claimant has a medically-determinable severe impairment, or combination of impairments which would significantly limit the claimant's physical or mental ability to do basic work activities, the ALJ

must analyze the claimant's medical records that are provided and any medical evidence resulting from consultative examinations or medical expert evaluation that has been ordered. See 20 C.F.R. § 416.912(f). When the record contains a number of different medical opinions, including those from the Plaintiff's treating physicians, consultive examiners or other sources that are consistent with each other, then the ALJ makes a determination based on that evidence. See 20 C.F.R. § 416.927(c)(2). If, however, the medical opinions are inconsistent internally with each other, or other evidence, the ALJ must evaluate the opinions and assign them respective weight to properly analyze the evidence involved. 20 C.F.R. § 416.927(c)(2), (d). Under the applicable regulations and case law, a treating physician's opinion must be given controlling weight if it is well-supported by medically-acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Craig, 76 F.3d at 590; 20 C.F.R. § 416.1527(d)(2); SSR 96-2p. However, the regulations do not require that the ALJ accept opinions from a treating physician in every situation, e.g., when the physician opines on the issue of whether the claimant is disabled for purposes of employment (an issue reserved for the Commissioner), or when the physician's opinion is inconsistent with other evidence, or when it is not otherwise well supported. Jarrells v. Barnhart, No. 7:04-CV-00411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005). See 20 C.F.R. § 404.1527(d)(3)-(4), (e).

Here, the ALJ properly weighed the medical opinions of record. Because Dr. Zullo's opinion was inconsistent with his own progress notes and physical examination findings, the ALJ determined that it was not entitled to controlling weight. (R. at 19-20.) The ALJ instead assigned greater weight to the opinions of Drs. Cole and Moreno because both the medical evidence of record and Plaintiff's daily living activities were consistent with their opinions. (R. at 20-21.)

In a Multiple Impairment Questionnaire, Dr. Zullo opined that, as a result of his impairments, Plaintiff could sit for only one hour and could stand/walk for only three hours in an eight-hour workday; Plaintiff could not sit continuously in an eight-hour workday, but would need to be able to get up and move around eight times and wait thirty minutes before sitting again; Plaintiff could frequently lift up to twenty pounds, could occasionally lift twenty to fifty pounds, and could never lift anything above fifty pounds; Plaintiff could occasionally carry items weighing up to twenty pounds, but could not carry anything weighing more than twenty pounds; Plaintiff had significant limitations in repetitive reaching, handling, and lifting, in that Plaintiff would become extremely short of breath for anywhere between five and ten minutes if he engaged in such activities; Plaintiff would have moderate difficulty grasping, turning, or twisting objects, minimal difficulty using his fingers/hands for fine manipulations, and marked difficulty using his arms for reaching; Plaintiff's symptoms would likely increase if he were placed in a competitive work environment; Plaintiff could not do a job that required him to push, pull, kneel, bend or stoop; Plaintiff would become short of breath if he kept his neck in a constant position; Plaintiff's experience of pain and other symptoms were severe enough to constantly interfere with his attention and concentration; Plaintiff was incapable of tolerating even a "low stress" work environment; Plaintiff would need a job that allowed him to take six unscheduled breaks, each lasting approximately ten minutes, during an eight-hour workday; Plaintiff's impairments were likely to produce only "bad days;" Plaintiff could not do a job where he was exposed to wetness, fumes, gases, temperature extremes, humidity, or dust; and Plaintiff's symptoms and limitations first appeared in 2002.  (R. at 195-99.)

There is no evidence in the record to support Dr. Zullo's extreme assessment of Plaintiff's

RFC. First, Dr. Zullo is an internal medicine doctor, not a specialist, who provided what appears to have been routine medical care to Plaintiff. Also, Dr. Zullo examined Plaintiff only twice since the alleged onset date. (R. at 28, 175-83.) After Plaintiff was diagnosed with pneumonia on April 4, 2005, the emergency room personnel provided Plaintiff with nebulization treatments and an Albuterol inhaler, which Plaintiff used on an as-needed basis. (R. at 144-50, 180, 202.) Dr. Zullo's notes indicated that after receiving such treatment, Plaintiff was "much improved." (R. at 180, 202.) Plaintiff visited Dr. Zullo on December 19, 2005, and reported that despite using the Albuterol inhaler on an as-needed basis, it had not provided him with any significant improvement. (R. at 179.) In response, Dr. Zullo provided samples for a one-month supply of Advair, to be taken twice a day, and told him to continue to use the Albuterol inhaler as needed. Id. On January 25, 2006 Plaintiff called Dr. Zullo to report that the Advair was not very effective. (R. at 178.) Dr. Zullo and Plaintiff discussed the possibility of Spiriva as an alternative medication; however, Plaintiff could not afford Spiriva. Id. Plaintiff agreed to call Dr. Zullo in the near future when he could afford Spiriva. Id. It does not appear that Dr. Zullo and Plaintiff discussed any additional, more affordable alternatives. Dr. Zullo's notes from June 12, 2006 reveal that Advair continued to be ineffective and that Plaintiff was still taking Albuterol twice a day. (R. at 177.) Dr. Zullo responded to Plaintiff's complaints about Advair's ineffectiveness by prescribing it in a higher dose. Id. On July 20, 2006 Plaintiff telephoned Dr. Zullo to report that Advair remained ineffective, at which point Dr. Zullo suggested that he continue to use Advair, but add Combivent to the medication regimen (R. at 175.) Plaintiff said he would follow this regimen if he could afford the prescriptions. Id. On August 7, 2006 Plaintiff telephoned Dr. Zullo to report that he could not afford the Advair and Combivent prescriptions. Id. It appears that at

that point Plaintiff and Dr. Zullo agreed to use only Albuterol to treat his COPD. Id. In a narrative report dated April 23, 2007, Dr. Zullo indicated that the only medication Plaintiff used, aside from his blood pressure medication, was his inhalers. (R. at 201.) The fact that Dr. Zullo neither drastically altered, nor drastically accelerated, Plaintiff's treatment after any of the times Plaintiff complained about the effectiveness of one or more of his medications suggests that Plaintiff's COPD was not as severe as Dr. Zullo's opinion suggests.

Furthermore, the ALJ properly found that Dr. Zullo's assessment of Plaintiff's functional limitations was not corroborated by the other evidence of record, including medical reports and Plaintiff's own statements. Notes of Dr. Zullo and other physicians seem to suggest that Plaintiff was not totally disabled. For example, Dr. Castle, an internal medicine doctor who neither examined nor treated Plaintiff, opined that the results of a pulmonary function spirometry test[6] that Plaintiff underwent on April 22, 2005 were "normal." (R. at 151-53.) Plaintiff underwent another pulmonary function test on April 11, 2006, the results of which were "good, especially with medicine." (R. at 155-67, 17, 168.) Additionally, Dr. Zullo's own notes are inconsistent with his assessment of Plaintiff as completely disabled. On several occasions just prior to and during the relevant period[7], Dr. Zullo reported that Plaintiff was in "no distress." (R. at 177, 179-80.) Also,

_____

[6] Pulmonary function tests are a group of tests that measure how well the lungs take in and release air, and how well they move gases such as oxygen from the atmosphere into the body's circulation. In a spirometry test, the individual breathes into a mouthpiece that is connected to an instrument called a spirometer. The spirometer records the amount and the rate of air that the individual breaths in and out over a period of time.
http://www.nlm.nih.gov/medlineplus/ency/article/003853.htm.

[7] The "relevant period" in this case spans from October 19, 2005, the alleged onset date, to December 31, 2006, the date that Plaintiff was last insured.

Dr. Zullo's notes from April 8, 2005 indicated that although Plaintiff's breath sounds[8] were decreased, his lungs were clear and there was no sign of rales[9], wheezes, or rhonci.[10] (R. at 202.) Dr. Zullo's notes from December 19, 2005 indicate that Plaintiff experienced shortness of breath upon exertion, but rarely while at rest. (R. at 179.) Accordingly, Dr. Zullo's assessment of Plaintiff's RFC is not corroborated by the above medical evidence.

Finally, the ALJ properly found that Plaintiff's own statements did not corroborate Dr. Zullo's assessment of his functional limitations. Dr. Zullo opined that Plaintiff's condition constantly interfered with his ability to pay attention and concentrate. (R. at 198.) However, Plaintiff testified that he periodically does puzzles, and he reads and watches television daily. (R. at 45, 118.) Moreover, Plaintiff indicated in a Function Report that his condition does not affect the amount of time he is able to pay attention. (R. at 119.) Although Dr. Zullo opined that Plaintiff could not function at a job that required him to push anything, Plaintiff stated that he could push a grocery cart and vacuum. (R. at 43, 49, 199.) Dr. Zullo also maintained that Plaintiff could sit for only one hour in an eight-hour day. (R. at 195.) However, Plaintiff testified that he drove sixty miles to the ALJ hearing. (R. at 44.) A sixty-mile car trip would require one to sit for approximately one hour. After driving the sixty miles, Plaintiff remained seated for the ALJ hearing. (R. at 35.) While Plaintiff did testify that as a result of sitting during the hearing he was

---

[8] A "breath sound" is a noise produced by structures of the lungs during breathing. Absent or decreased sounds can mean: air or fluid in or around the lungs, increased thickness of the chest wall, over-inflation of a part of the lungs (emphysema can cause this), or reduced airflow to part of the lungs. http://www.nlm.nih.gov/medlineplus/ency/article/003323.htm.

[9] A rale is a small clicking, bubbling, or rattling sound in the lung, and is a common type of an abnormal breath sound. http://www.nlm.nih.gov/medlineplus/ency/article/003323.htm.

[10] Rhonchi, another type of abnormal breath sound, are sounds that resemble snoring, and occur when air is blocked or becomes rough through the large airways. Id.

experiencing breathing difficulty, nevertheless that difficulty did not preclude him from testifying. Id. Thus, Dr. Zullo's opinion that Plaintiff's COPD rendered him incapable of sitting any longer than one hour is inconsistent with Plaintiff's activities.

Dr. Zullo also opined that Plaintiff's symptoms and limitations first appeared in 2002. (R. at 199.) Plaintiff did display some symptoms indicative of a respiratory impairment as early as 2002 and prior to the alleged onset date. Specifically, on January 8, 2002 Plaintiff complained of tightness in his chest accompanied by shortness of breath, and on May 11, 2004, Plaintiff was experiencing some shortness of breath with exertion. (R. at 207, 205.) However, Dr. Zullo's notes from May 11, 2004 indicate that Plaintiff's lungs were clear and that there were no rales, wheezes, or rhonchi. (R. at 205.) Also, Dr. Zullo's notes from January 28, 2002 revealed that Plaintiff was physically active at the time. (R. at 207.) Thus, there is nothing in the medical record from 2002 to the alleged onset date to indicate that Plaintiff's symptoms were severe enough to preclude him from being employed. In fact, Plaintiff indicated that his breathing difficulties did not preclude his employment until October 2005. (R. at 30.)

Instead, the ALJ attributed greater weight to Drs. Cole and Moreno's assessment of Plaintiff's RFC for "medium exertional work." (R. at 20, 169-74, 185-92.) Drs. Cole and Moreno opined that Plaintiff could occasionally lift and/or carry fifty pounds and could frequently lift and/or carry twenty-five pounds; could stand and/or walk for a total of about six hours in an eight-hour workday; could sit for a total of about six hours in an eight-hour workday; could push and/or pull without any difficulty; had no difficulty climbing, balancing, stooping, kneeling, crouching, or crawling; and that Plaintiff had no difficulty reaching, handling, or feeling. (R. at 170-71, 187-88.) Dr. Cole maintained that Plaintiff did not need to avoid exposure to extreme temperatures or

humidity, but did need to avoid concentrated exposure to fumes, odors, dust, gases, poor

ventilation, etc.; whereas Dr. Moreno opined that Plaintiff needed to avoid all exposure to extreme

cold and avoid concentrated exposure to wetness, vibration, fumes, odors, dust, gases, poor

ventilation, etc. (R. at 170-73, 187, 189.) As support for their findings, Drs. Cole and Moreno

both relied on Plaintiff's written statements that he could lift forty pounds, squat for one minute,

bend for one minute, walk fifty feet, and climb ten steps. (R. at 119, 174, 191.) Additionally, both

doctors cited Plaintiff's testimony that he was able to read, watch television, and do puzzles; do

light household cleaning; and go shopping. (R. at 174, 191.) The doctors also took into account

Plaintiff's statements that he could not do heavy yard work or heavy housework; he could not be

around pollen, dust, or humidity; and he could not bend to put on pants, socks, or shoes. Id. In

addition to Plaintiff's testimony, both doctors also cited breathing test results, which revealed good

lung function, and the conservative nature of Plaintiff's treatment in support of their RFC

assessment. (R. at 174, 179, 151-53, 17, 168, 21.)

The ALJ assumed an RFC allowing for only sedentary work, which is more restrictive than

the RFC that Drs. Cole and Moreno identified. (R. at 22, 51.) In support for this finding, the ALJ

noted that breathing tests revealed good lung function; that Plaintiff's daily activities did not seem

to indicate that his COPD would preclude him from doing all work; that although Plaintiff had

pursued follow-up care for his COPD, he did so only sporadically; that Dr. Zullo is an internal

medicine doctor rather than a specialist; and that the course of medical treatment that Plaintiff

received was generally conservative and routine. (R. at 21.) Accordingly, the ALJ's decision not

to grant controlling weight to Dr. Zullo's assessment of Plaintiff's RFC is supported by substantial

evidence and application of the correct legal standard. Furthermore, the ALJ's subsequent

determination that Plaintiff had the RFC to perform a full range of sedentary work, with the previously mentioned limitations, is supported by substantial evidence and application of the correct legal standards.

**B.    Plaintiff argues that the ALJ failed to properly evaluate his credibility.**

Plaintiff next argues that the ALJ failed to apply the correct legal standard in evaluating his credibility.  (Pl.'s Mem. at 16.)  Specifically, Plaintiff argues that the ALJ's exclusive focus on a "lack of a particular type of treatment" and on Plaintiff's daily activities was impermissible.  (Pl.'s Mem. at 16.)  Plaintiff asserts that the ALJ wrongfully injected his own lay opinion into the record when he rejected Plaintiff's allegations as inconsistent with a "type" of treatment associated with disabling COPD.  Id.  Furthermore, Plaintiff contends that the ALJ should have given more deference to Plaintiff's lack of finances as a reason for not seeing a specialist for his impairment. Id.

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC.  20 C.F.R. §§ 416.920(e)-(f), 416.945(5)(1).  The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints.  In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis.  Craig v. Charter, 76 F.3d 585, 594 (4th Cir. 1996); see also SSR 96-7p; 20 C.F.R. §§ 404.1529(a) and 416.929(a).  The first step is to determine whether there is an underlying medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms.  Id.; SSR 96-7p, at 1-3.  The ALJ must consider all the medical evidence in the record.  Craig, 76 F.3d at 594-95; SSR 96-7p, at 5, n.3; see

also SSR 96-8p, at 13 (specifically stating that the "RFC assessment must be based on *all* of the relevant evidence in the case record") (emphasis added). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the intensity and persistence of the pain and the extent to which it affects the individual's ability to work. Craig, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms and the ALJ must provide specific reasons for the weight given to the individual's statements. Craig, 76 F.3d 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. See Eldeco, Inc. v. NLRB, 132 F.3d 1007, 1011 (4th Cir. 1997). The Court of Appeals for the Fourth Circuit, as the immediate controlling appellate authority for this court, has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Id. (quoting NLRB v. Air Prods. & Chems., Inc., 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" Id. (quoting NLRB v. McCullough Envtl. Servs., Inc., 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, alone, conclusive evidence that Plaintiff is disabled. See Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could

16

reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 591.

At step one of the credibility analysis, the ALJ found that Plaintiff's "medically determinable impairment could have been reasonably expected to produce the alleged symptoms," but he also concluded at step two that Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were "not entirely credible." (R. at 19.) Plaintiff testified that because of his COPD, he had to avoid humidity, pollen, cleaning solvents, and certain perfumes. (R. at 31, 33-34.) Plaintiff further testified that his COPD made it difficult for him to climb the six steps leading up to his trailer; to walk up and down his eighty-foot trailer; to remain in a seated position; to take showers; and to bend, stoop, kneel, or crawl. (R. at 34-35, 43, 45, 48.) Plaintiff also alleged in written statements that his condition limited all of his physical activities. (R. at 18, 114-21.) However, Plaintiff's statements regarding the severity of his condition are not supported by his reported activities of daily living, or by the medical evidence of record. Id. The ALJ noted that Plaintiff was able to prepare simple meals, wash dishes, do laundry, watch television, go shopping, and drive a car. (R. at 19, 114-21, 134-40, 11-23.) Additionally, Plaintiff reported that he was able to take care of his personal needs, despite his symptoms. (R. at 18, 114-21, 134-40.) Further, Plaintiff stated that he was able to go out alone, pay bills, count change, handle a savings account, and use a checkbook. (R. at 18, 117-18.) Such daily living activities are consistent with the limited range of sedentary work that the ALJ found Plaintiff capable of performing, and are therefore inconsistent with Plaintiff's allegation of total disability. (R. at 19.) Thus, Plaintiff's statements regarding his daily activities are, at least to some appreciable extent, inconsistent with the functional limitations he alleged.

17

As noted earlier, the medical evidence of record also fails to support Plaintiff's allegations of disabling symptoms and limitations.  Plaintiff's treatment was apparently routine and conservative, and treatment notes from his examinations do not suggest that Plaintiff had such severe impairments which would preclude him from all employment.  (R. at 28, 175-83, 201-02, 144-50.)  Several laboratory tests also undermine Plaintiff's allegations of disabling impairments. (R. at 151-53, 155-67, 17, 168.)

Plaintiff also argues that his lack of finances, rather than a lack of disabling COPD, explains the conservative nature of his treatment; and, therefore, the ALJ should not have focused on the type of treatment Plaintiff received to arrive at his conclusion that Plaintiff was less than credible.  (Pl.'s Mem. at 16-17.)  A lack of finances is a legitimate reason to not seek medical treatment, and cannot be held against the claimant's allegations.  ( See S.S.R. 82-59.)  If an individual is unable to afford a prescribed treatment that he or she is willing to undertake, and if free community resources (e.g., clinics, charitable and public assistance agencies, etc.) are not available, then the individual's "failure" to follow a prescribed treatment would not preclude a finding of "disability."  Id.  However, the claimant must explore all possible resources, and contacts with such resources and the claimant's financial circumstances must be documented.  Id. Plaintiff testified that he could not afford to see Dr. Zullo as often as he would have like to consult with him, and that he could not afford the prescriptions Dr. Zullo prescribed.  (R. at 20, 29.) However, Plaintiff also  testified that he did not attempt to find a source that would provide him with free or affordable medication.  (R. at 32-33.)  Plaintiff asserts that the ALJ found it significant that he did not pursue treatment with a specialist.  (Pl.'s Mem. at 16.)  The assertion is lacking, as the ALJ only noted that Plaintiff had not even sought treatment with a specialist, and there is no

evidence of record to even indicate that Plaintiff and Dr. Zullo ever discussed the necessity of seeking assistance from a specialist. (R. at 21.)

Thus, the ALJ considered all of the evidence, including the objective clinical signs and laboratory findings, medications, and opinions of Dr. Zullo and of the non-treating physicians, as well as Plaintiff's subjective complaints. Nonetheless, the ALJ found that the evidence of record did not support Plaintiff's allegations of debilitating pain and limitations. Accordingly, the Court recommends a finding that the ALJ's conclusion regarding Plaintiff's credibility is based on substantial evidence and should be affirmed.

### C.    Plaintiff contends that the ALJ relied upon flawed vocational expert testimony.

Finally, Plaintiff contends that the ALJ relied upon flawed VE testimony. Specifically, Plaintiff argues that the VE's testimony in response to the hypothetical presented by the ALJ was based upon functional limitations not established by substantial evidence in the record, and consequently that the representative occupations given by the VE are invalid and cannot be used by the Commissioner to meet his burden at step five of the disability analysis. (Pl.'s Mem. at 18.)

At the fifth step of the sequential analysis, the Commissioner must show that, considering the claimant's age, education, work experience, and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f). The Commissioner can carry his burden in the final step with the testimony of a VE. When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence of record and a fair description of all the claimant's impairments so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. Walker v. Bowen, 889 F.2d 47, 50

(4th Cir. 1989).  Only when the hypothetical posed represents <u>all</u> of the claimant's substantiated impairments will the testimony of the VE be "relevant or helpful."  <u>Id.</u>

The ALJ asked the VE whether there were occupations that could be performed by a hypothetical individual having the same age, education, past relevant work experience, and RFC as Plaintiff through the date last insured.  (R. at 51-52.)  The VE testified that the hypothetical individual could perform occupations such as a service dispatcher, order clerk, and purchase order checker.  (R. at 53-54.)  The VE further testified that the representative occupations would not require any significant vocational adjustment, as they were performed in the same industry using the same tools in the same work setting as Plaintiff's past relevant work.  (R. at 54.)

The VE also testified that based on the limitations given by Dr. Zullo, Plaintiff would not be able to work at all.  However, the ALJ was not required to accept such testimony, as Dr. Zullo's limitations were more restrictive than those supported by the evidence of record.  <u>See Walker</u> 889 F.2d at 50 (noting that an ALJ's hypothetical question need only include those impairments supported by the record); <u>Martinez v. Heckler</u>, 807 F.2d 771, 774 (9th Cir. 1986) (stating that an ALJ may reject a hypothetical question posed by Plaintiff's attorney that is more restrictive than his own).  Accordingly, because the hypothetical question posed to the VE fairly set forth all of Plaintiff's limitations as supported by substantial evidence, the ALJ's decision should be affirmed.

## V.  CONCLUSION

Based on the foregoing analysis, it is the recommendation of this Court that Plaintiff's motion for summary judgment (docket no. 10) and motion to remand (docket no. 11) be DENIED; that Defendant's motion for summary judgment (docket no. 13) be GRANTED; and, that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable James R. Spencer and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen (14) days after being served with a copy of this report may result in the waiver of any right to a _de novo_ review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

_____/s/_____

DENNIS W. DOHNAL

UNITED STATES MAGISTRATE JUDGE

Date: June 25, 2010
Richmond, Virginia